**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DONALD KAPPERMAN,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**UNITED STATES and BENJAMINE** )<br>**WAGNER,** )<br>)<br>Defendants. )<br>_____ ) | 1:92-cr-5164 AWI<br><br>MEMORANDUM OPINION<br>AND ORDER DENYING<br>PLAINTIFF'S MOTION FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF<br><br>Doc. # 940 |

    This is a motion to compel production of samples of chemicals that were seized in the course of investigation of the criminal case that lead to the conviction of plaintiff Donald Kapperman ("Kapperman" or "Plaintiff") on charges of conspiracy to manufacture methamphetamine and possession of ephedrine, a listed substance that is a necessary ingredient in the manufacture of methamphetamine.  The indictment in the criminal case named five defendants.  Of these five, three were convicted by plea of guilty.  Co-Defendant Thomas Farrugia was convicted in 1994 following a jury trial.  Plaintiff was convicted following a separate jury trial on September 23, 1994.  The matter now before the court is styled as a motion for injunctive and declaratory relief to compel production of trial exhibits for purposes of chemical testing (hereinafter, the "Motion").  As such, Plaintiff's motion represents the most

recent in a long line of pleadings by both Plaintiff and co-Defendant Farrugia to obtain samples of certain trial exhibits for "complete chemical analysis." The court notes that both Plaintiff and co-Defendant Farrugia are explicit in their intention to obtain the complete chemical testing of the trial exhibits for the purpose of pursuing later claims of actual innocence. Although the legal basis for the relief Plaintiff seeks is something of a mystery, the court has determined that the instant Motion should be filed within the existing criminal case at Docket Number 940. The court recognizes that the post-conviction options open to Plaintiff are very much limited by applicable statutes of limitations. However, for reasons that will be explained more thoroughly below, it is the court's purpose to rule on the substance of Plaintiff's Motion and such impediments as would normally be occasioned by late-filed nature of Plaintiff's Motion will be overlooked for the purposes of a more complete discussion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

There is little if any factual background to be gleaned from Plaintiff's Motion. So far as the court can tell from the very extensive docket in the criminal case, the bulk of the post-conviction motions that have been filed were filed by co-Defendant Farrugia. Although Plaintiff's Motion lacks any substantial discussion of a legal basis for relief, the factual background that pertains to the chemical substances in question in Plaintiff's Motion is no different from the factual basis that underpinned Farrugia's Fourth Amended Complaint in civil case 08cv0053. On October 29, 2012, the court filed a screening order dismissing Farrugia's Fourth Amended Complaint in that case (hereinafter, the "October 29 Order"). In the October 29 Order, the court summarized the factual background relevant to the issue of complete chemical testing by drawing from documents filed in the past in relation to Farrugia's many efforts to accomplish the same chemical testing that is the subject of Plaintiff's Motion. The court therefore abbreviates, borrows and adapts the summary of fact set forth in its October 29 Order for purposes of analysis of Plaintiff's Motion.

For purposes of the Plaintiff's Motion, the pertinent facts revolve around three containers of "white powdery substance" that were recovered during the investigation of the criminal case. At the outset of the investigation in the criminal case, Detective Toby Rien of the Fresno County

Sheriff's Office Department sold a 55 pound "tin" of pure "bait" ephedrine to co-defendant Morgan, who resided in Fresno, California.  Following the sale to Morgan, Kapperman met with Morgan in Fresno and then drove to Lancaster, California, while being followed by law enforcement officers.  After Kapperman left Morgan, Morgan reported to Rien that Kapperman had purchased and was in possession of one-half of the 55 pounds of pure ephedrine that Morgan had purchased from Rien. Sometime after Kapperman returned to his residence in Lancaster, police secured and searched the residence and an out-building which was found to contain a variety of laboratory glassware, an assortment of chemicals, a notebook and other documents, and a box of "white powdery substance."  While there was some dispute at trial as to who had what level of access to the out-building and the "white powdery substance," there is no dispute that the Lancaster property was Kapperman's residence and that he had access to the out-building and its contents.  At trial, evidence was adduced to indicate that the "white powdery substance found at Kapperman's residence was not pure ephedrine but was a mix of chemicals containing something close to 50% ephedrine.

     Police also searched Farrugia's residence in Oakley, California and there seized another box of "white powdery substance" that turned out to be a mix of chemicals containing about 45% ephedrine.  Thus, this action concerns three containers of suspected ephedrine.  To avoid confusion these are referred to as the Fresno Substance, the Lancaster Substance and the Oakley Substance.  There appears to be no dispute that the Fresno Substance consists of about 25+ pounds of pure ephedrine which was provided by the California Bureau of Narcotics as "bait" in the investigation that lead to the criminal charges against the five Defendants.  At trial, the government represented at some point that the Lancaster Substance represented the other 25+ pounds of the Fresno Substance, however Farrugia disputed this and presented a chemical analysis by his own expert that indicated the Lancaster Substance was not pure ephedrine, but was a mix containing about 55% ephedrine and the balance of other unidentified chemicals.  In a similar vein, the government initially represented at trial that the Oakley Substance was a mixture of chemicals containing methamphetamine, but evidence of chemical analysis was adduced that showed that the Oakley Substance contained about 45% ephedrine and no methamphetamine.

Both Farrugia and Kapperman assert that a more "complete forensic analysis of the Lancaster and Oakley Substances will show that the Substances are different from each other and different from the Fresno Substance. Neither Farrugia nor Kapperman have offered any explanation of how an analysis of the non-ephedrine components of any of the Substances would make any contribution to either party's claim of actual innocence.

## LEGAL STANDARD

The court interpret's Plaintiff's Motion as being an effort by Plaintiff to obtain relief against a governmental entity for the ultimate, albeit indirect purpose of eventually challenging the legality of his sentence. Plaintiff's Motion therefore falls within the category of actions brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity and is therefore subject to screening by the district court. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(2)(B)(ii).

A complaint fails to state a claim upon which relief can be granted if there is a failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). A complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly"). While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g

denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

## DISCUSSION

Civil case number 08cv0053 was brought by co-Defendant Farrugia pursuant to 42 U.S.C. § 1983 and Bivins v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  The purpose of Farrugia's civil case was to secure from the California Bureau of Narcotic Enforcement samples of the three Substances that have been for several years in the custody of the Bureau so that the samples can be "completely chemically analyzed" to determine the presence and amount of binders, adulterants and other chemical characteristics.  Prior to the institution of Farrugia's civil action, the docket of the underlying criminal case reflects some fifty or more instances of motions or requests all aimed at the same purposes – the thorough chemical analysis of the Substances to definitively show their differences of composition and, by inference, their different origins.  Although both defendants in the criminal case made separate and multiple requests and motions before conviction to accomplish this "complete analysis," it appears that the vast majority, if not all, of the post-conviction motions, requests or separate actions were undertaken by co-Defendant Farrugia.

Kapperman's, instant motion appears to be in the nature of a "me too" accompaniment to Farrugia's most recent effort as reflected in his Fourth Amended Complaint to his civil case.  The court notes parenthetically that Kapperman's motion coincides with the fact that, for the first time since their commitment to the custody of the Bureau of Prisons, both Kapperman and Farrugia are currently housed at the federal facility in Terra Haute, Indiana.

Kapperman's Motion fails to set forth any legal basis of entitlement to relief other than to make the conclusory assertion that relief is compelled by the Supreme Court's holding in Skinner v. Switzer, 31 S.Ct. 1289 (2011).  The court's October 29 Order considered at some length

1    whether Farrugia could rely on 42 U.S.C. § 1983 and Bivins to assert his claim to compel
2    production of the requested samples of the Lancaster and Oakley Substances and reached a
3    negative conclusion.  Since Kapperman's Motion lacks any legal framework for analysis of
4    entitlement to relief, the court will note that the motion is subject to denial on that ground and
5    will skip to the more fundamental and illustrative question of whether Kapperman can claim any
6    constitutionally cognizable interest in procuring the requested samples of the Substances.

7        "A motion under § 2255 is generally the exclusive remedy for a federal prisoner who
8    seeks to challenge the legality of confinement, Muth v. Fondren, 676 F.3d 815, 818 (9th Cir.
9    2012), and consequently an inmate who unsuccessfully petitions under § 2255 is generally barred
10   from bringing claims previously presented and decided on the merits.  Kuhlmann v. Wilson, 477
11   U.S. 436, 451 (1986).  Under exceptional and rare circumstances a petitioner may avoid the bar
12   against successive claims where the "ends of justice" so demand.  Id.  Section 2255(e) provides a
13   limited "escape hatch" in cases where the remedy under section 2255 is "'inadequate or
14   ineffective to test the legality of [the petitioner's] detention.'"  Muth, 676 F.3d at 818.  This
15   circuit has held that "a § 2241 petition is available under the 'escape hatch' of § 2255 when a
16   petitioner (1) makes a claim of actual innocence and (2) has not had an 'unobstructed procedural
17   shot' at presenting that claim."  Stephens v. Herrera, 464 F.3d 895, 898 (9th Cir. 2006).  The
18   Ninth Circuit has established that the standard for pleading a claim for actual innocence is the
19   standard set forth in Bousley v. United States, 523 U.S. 614 (1998).  Muth, 676 F.3d at 819.  The
20   standard set forth in Bousley provides that to make a claim of actual innocence a petitioner "must
21   demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror
22   would have convicted him."  Bousley, 523 U.S. at 623 (internal quotations and citation omitted).

23       As the court's October 29 Order in Farrugia's civil case pointed out, the effort to compel
24   production of state-held evidence *following* conviction is limited.  The case the court has
25   previously used to establish this proposition is District Attorney's Office for the Third Judicial
26   Dist. v. Osborne, 557 U.S. 52 (2009) ("Osborne").  The Osborne court held that a defendant who
27   is convicted after jury trial has a lesser liberty interest because the presumption of innocence is
28   removed.  Id. at 68-69.  Consequently, a federal court can only intervene in the state's refusal to

1  provide relief where the post-conviction relief otherwise available to the convicted "'offends
2  some principal of justice so rooted in the traditions and conscience of our people as to be ranked
3  as fundamental' or 'transgresses any recognized principle of fundamental fairness in operation.'
4  [Citation]." Id. at 69 (quoting Medina v. California, 505 U.S. 437, 448 (1992)).  Although
5  Osborne and its later companion case Skinner dealt with the constitutional sufficiency of state
6  statutes pertaining to access to DNA evidence after conviction, the court's October 29 Order
7  observed that Osborne is pertinent to Kapperman's and Farrugia's efforts to secure access to the
8  state's drug evidence in that Osborne is authority for the proposition that the touch-stone of a
9  liberty interest in post-conviction evidence is the materiality of the evidence. Id. at 63.  In
10 practical terms, this means that Plaintiff can only claim an interest in the "compete chemical
11 analysis" of any of the Substances to the extent that the analysis would tend to show that Plaintiff
12 is factually innocent of the charges of his conviction.

13        Plaintiff's "me too" Motion for injunctive relief asserts, as did Farrugia's complaint, that
14 the complete chemical analysis of the Substances will prove with certainty that the Lancaster and
15 Oakley Substances are different from the Fresno Substance and different from each other.  As the
16 court asked semi-rhetorically in its October 29 Order, "[h]ow does that proof advance Plaintiff's
17 claim of factual innocence?" October 29 Order at 8:28-29.  The answer, as the court has pointed
18 out, is that the proffered evidence does not advance claims of factual innocence at all.  Plaintiff's
19 conviction with regard to the charge of possession of a listed substance requires only that
20 evidence is offered to show that the powdery white Lancaster Substance was possessed by
21 Plaintiff and that it *contained* ephedrine.  The fact that the Lancaster Substance was not pure
22 ephedrine raises a ground for dispute as to whether the box that was found in Lancaster during
23 the search was a box of the same Fresno Substance that the government represented was
24 purchased by Kapperman and transported to Lancaster; but it does not by any means prove that
25 Kapperman was innocent of possessing ephedrine.

26        As has been repeatedly pointed out by the court in past opinions and orders, both
27 Kapperman and Farrugia were able to present evidence at trial that the Substances they were
28 accused of possessing were different in chemical make-up from each other and from the Fresno

1 Substance. As Kapperman puts it, the Lancaster Substance was "crushed up pills." Whether the
2 jury believed Kapperman's assertion or not, even Kapperman's own analysis of the Lancaster
3 Substance showed that it contained ephedrine and that fact, along with evidence that the
4 Substance was in Kapperman's control, is sufficient to support the jury's verdict. Similarly,
5 Kapperman's conviction on the count of conspiracy to manufacture methamphetamine does not
6 require a showing that there was any methamphetamine present in either Substance or in residue
7 found at the Lancaster site; it requires only that materials were found that indicate the capacity to
8 manufacture methamphetamine and evidence was adduced that showed an intent to carry out the
9 manufacture of methamphetamine.

10 As previously mentioned, Plaintiff's Motion fails to state any legal basis for relief and
11 must be dismissed on that account. For the most part, the foregoing discussion, as well as the
12 more extensive discussion in the court's October 29 Order dismissing Farrugia's civil claims, is
13 offered in an effort to explain to both Plaintiff and Farrugia why this court has denied, now
14 denies, and will continue to deny any and all efforts to compel production of sample of any or all
15 of the Substances for the purpose of "complete forensic chemical analysis." So far as this court
16 is concerned the matter is now settled and any future efforts to accomplish the sought-after
17 analyses will be summarily dismissed because (1) the evidence the parties seek to adduce is
18 cumulative to evidence that was previously provided at trial, and (2) because the sought-after
19 evidence has no demonstrated relevance to the parties' claims of actual innocence.

21 THEREFORE, for the reasons discussed above, it is hereby ORDERED that Plaintiff's
22 Motion for injunctive and declaratory relief is hereby DENIED.

24 IT IS SO ORDERED.

25
26 Dated:    November 9, 2012                    _____
                                                  UNITED STATES DISTRICT JUDGE